**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ELIZABETH RIVERA, | Case No. CV 16-05735-KES |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Elizabeth Rivera ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

## I.

## BACKGROUND

Plaintiff applied for SSI on July 13, 2012, alleging disability commencing July 13, 2012. Administrative Record ("AR") 176-84. An ALJ conducted a hearing on October 9, 2014, at which Plaintiff, who was represented by an attorney,

1

appeared and testified. AR 37-84.

On January 13, 2015, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 20-36. The ALJ found that Plaintiff had the following severe impairments: hypothyroidism, status post meniscus degeneration of the left knee, history of hyperlipidemia[1], and bipolar disorder II. AR 25. Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional limitations: she can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; she can stand and/or walk for six hours and sit for eight hours in an eight-hour workday; she can walk for 30 minutes at a time and stand for one hour at a time; she can frequently kneel, crouch and crawl; she can frequently push/pull with her upper extremities. AR 26-27.

Mentally, the ALJ found that Plaintiff is limited to the performance of simple, routine, and repetitive work and "to less than occasional performance of complex technical work"; she is able to interact occasionally with co-workers, the general public, and supervisors; and she "is able to perform work at stress level three (3) on a scale of '1 to 10,' '10' (by example) being the work of an air controller, and '1' being the work of a night dishwasher." AR 27. Based on this RFC and the written answers provided by a vocational expert[2] ("VE"), the ALJ found that Plaintiff could return to her past relevant work as a garment sorter.[3] AR

---

[1] A condition in which too many lipids (fats) are in the blood, generally referred to as high cholesterol. See http://www.heart.org/HEARTORG/Conditions/Cholesterol/AboutCholesterol/Hyperlipidemia_UCM_434965_Article.jsp#.WPO92FPyuRs.

[2] The VE did not testify at Plaintiff's hearing. Rather, the ALJ and Plaintiff's counsel submitted written interrogatories to the VE, which she answered. AR 320-25, 336-38.

[3] The VE collectively identified three of Plaintiff's past jobs (i.e., garment (Cont.)

30. Therefore, the ALJ concluded that Plaintiff is not disabled. AR 30.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

In determining a claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but the ALJ need not consider properly rejected evidence of subjective complaints. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Batson v. Comm'r of SSA, 359 F.3d 1190, 1197 (9th Cir.

---

sorter, bagger, and receptionist) as having "moderate" stress levels of "3-4." AR 322.

3

2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

**A.     The Five-Step Evaluation of Disability Process.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id., §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the

third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

### III.
### ISSUES PRESENTED

Issue One: Whether the ALJ properly determined that Plaintiff's past employment as a garment sorter qualified as past relevant work.

Issue Two: Whether the ALJ properly considered the opinions of treating doctors Maria Longhitano, M.D., and Liauna Tolmasoff, Psy.D.

(Dkt. 21 [Joint Stipulation or "JS"] at 4.)

# IV.

# DISCUSSION

**A.      The ALJ failed to provide any reasons for discounting Dr. Longhitano's Opinions.**

   **1.      Applicable Law.**

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended on April 9, 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

   If there is "substantial evidence" in the record contradicting the opinion of the treating physician, then the opinion of the treating physician is no longer entitled to controlling weight. When an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." Orn, 496 F.3d at 632 (quoting Miller v. Heckler, 770 F.2d 845, 849) (9th Cir. 1985)). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests

that the treating physician has not herself considered." Id.

When contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." Id. at 633. In many cases, a treating source's medical opinion will be entitled to the greatest deference and should be adopted, even if it does not meet the test for controlling weight. Id. The weight given a treating physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 416.927(c)(3)-(6). Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation"); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

**2. Relevant Medical Evidence.**

a. Dr. Longhitano's Opinions.

Dr. Maria Longhitano, M.D., was Plaintiff's treating psychiatrist from April 2013 through at least April 2015. See AR 598-628, 632-640. She saw Plaintiff every two weeks from April 2013 to June 2013, and once a month thereafter. AR 583, 632.

On July 11, 2013, Dr. Longhitano completed a "Mental Residual Functional Capacity Questionnaire" providing her opinions as to Plaintiff's mental impairments. AR 583-87. Dr. Longhitano diagnosed Plaintiff with bipolar type II disorder, generalized anxiety disorder, polysubstance abuse in full remission, hypothyroidism, obesity, high cholesterol, and uterine fibromyoma. AR 583. She noted that Plaintiff was taking lithium and trazedone, with no side effects. Id. She reported a history of severe depression, isolation, anger, irritability, poor

concentration, constant worries, racing thoughts, and difficulty dealing with other people for many years. Id. She listed Plaintiff's prognosis as poor to fair. Id.

Using a checklist, Dr. Longhitano identified a number of signs and symptoms from which Plaintiff suffers, including impairment in impulse control, generalized persistent anxiety, mood disturbance, emotional withdrawal or isolation, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, easy distractibility, and sleep disturbance. AR 584.

Based on her observations of how Plaintiff's mental capabilities are affected by her impairments, Dr. Longhitano provided opinions as to Plaintiff's ability to do certain work-related activities. AR 585. Dr. Longhitano provided one of the following assessments for a range of work activities:

- *Unlimited or very good*;
- *Limited but satisfactory*;
- *Seriously limited, but not precluded* means ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances;
- *Unable to meet competitive standards* means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting;
- *No useful ability to function*, an extreme limitation, means your patient cannot perform this activity in a regular work setting.

AR 585.

Dr. Longhitano opined that Plaintiff was *seriously limited, but not precluded* in her abilities to understand, remember, and carry out very short and simple instructions; maintain attention for a two hour segment; sustain an ordinary routine without special supervision; make simple work-related decisions; interact

appropriately with the general public; maintain socially appropriate behavior; and travel in unfamiliar places. AR 585-86.

Dr. Longhitano opined that Plaintiff was *unable to meet competitive standards* in a regular work setting with regard to her abilities to remember work-like procedures; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek with interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and be aware of normal hazards and take appropriate precautions.

Dr. Longhitano further opined that Plaintiff has *no useful ability to function* with regard to her abilities to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; and deal with stress of semiskilled and skilled work. AR 585-86.

Lastly, Dr. Longhitano opined that Plaintiff would be expected to be absent from work due to her impairments or treatment more than four days per month. AR 587.

     b.  Dr. Tolmasoff's Opinions.

On July 8, 2014, Liauna Tolmasoff, Psy.D., wrote a one-paragraph letter concerning Plaintiff's impairments. AR 629. Dr. Tolmasoff noted that Plaintiff has been enrolled in the Field Capable Clinical Services program at Hillview Mental Health Center as of March 18, 2013. Id. Dr. Tolmasoff diagnosed Plaintiff with bipolar type II disorder. Due to this disorder, Plaintiff has symptoms of excessive worrying, depressed mood, fatigue, poor concentration, poor focus, low self-worth, racing thoughts, anger outbursts, and low motivation. Id. Dr. Tolmasoff opined that

"these symptoms interfere with the claimant's ability to live independently as she is currently homeless, and impair her ability to sustain employment." Id. Plaintiff's treatment at Hillview consists of individual psychotherapy, group therapy, case management, and psychiatric medication support. Id. Dr. Tolmasoff also noted that Plaintiff was compliant with her treatment. Id.

### c. Dr. Colonna's Opinions.

Consultative examiner Rosa Colonna, Ph.D., completed a psychological evaluation of Plaintiff on November 14, 2012. AR 403-09. Dr. Colonna noted that Plaintiff was passively aggressive, superficially pleasant, and "does quite poorly on psychometric testing that appear[s] to be inconsistent with her activities of daily living." AR 405-06. She noted that response time and work pace are within normal limits. AR 406. Plaintiff's speech was simplistic but clear, her thoughts were organized linearly, and psychomotor slowing was not evident. Id. Plaintiff's current intellectual functioning was borderline to low average, although scores fell within the mentally deficient range. Id. Plaintiff's mood was mildly dysthymic[4], and her affect was slightly constricted. Id. Plaintiff's memory, attention, and concentration span were moderately diminished, and her fund of knowledge was poor. Id. On the WAIS-IV test, Plaintiff obtained a full scale IQ of 69 with verbal comprehension, perceptual reasoning, working memory, and processing speed IQs of 70, 71, 83, and 74, respectively. AR 407. Dr. Colonna opined that Plaintiff's test results "appear to be an under estimation of the claimant's ability at this time. The under estimation of her ability is measured by her overall presentation and incongruence with her actual activities of daily living which appear to be much higher than shown on these test results." Id.

---

[4] Dysthymia is a mood disorder consisting of the same cognitive and physical symptoms as depression, with less severe but longer-lasting symptoms. See https://en.wikipedia.org/wiki/Dysthymia.

Dr. Colonna diagnosed Plaintiff with "poly-substance abuse versus dependence in remission per self report; dysthymia; borderline intellectual functioning rule out low average, with scores in the mentally deficient range but probably not credible; and personality disorder borderline dependent traits." AR 407-08. Notably, Dr. Colonna did not diagnose Plaintiff with bipolar disorder.

As to Plaintiff's ability to perform work-related activities, Dr. Colonna opined that Plaintiff would be able to understand, remember, and carry out short, simplistic instructions without difficulty and make simplistic work-related decisions without special supervision. AR 408. Dr. Colonna further opined that Plaintiff has a mild inability to (1) understand, remember and carry out detailed instructions, and (2) interact appropriately with supervisors, co-workers, and peers. Id.

### 3. The ALJ's Treatment of the Medical Evidence.

The ALJ discussed Dr. Colonna's opinion at length. AR 27-28. He then briefly summarized Drs. Longhitano and Tolmasoff's opinions. AR 28. He then found that the "mental health professionals concur that [Plaintiff] has severe bipolar II disorder, which is manifested in a depressed mood, irritability, anger, and racing thoughts." AR 29. He then dismissed Dr. Colonna's reports of a low IQ score because of Dr. Colonna's finding that Plaintiff was not a trustworthy test-taker. Id. The ALJ did not specifically credit or discredit the opinions of Drs. Longhitano and Tolmasoff concerning Plaintiff's functional abilities.

The ALJ's RFC assessment most closely aligns with Dr. Colonna's assessment. Dr. Colonna opined that Plaintiff could understand, remember, and carry out short, simplistic instructions with difficulty, and that she had a *mild* inability to understand detailed instructions and interact appropriately with supervisors, coworkers, and peers. AR 408. The ALJ's RFC assessed that Plaintiff could perform simple, routine, and repetitive work, less than occasional performance of complex technical work, and occasional interaction with coworkers, the general public, and peers. AR 27.

**4. Analysis.**

Because Drs. Longhitano and Tolmasoff's opinions were contradicted by the opinion of Dr. Colonna, who assessed fewer functional limitations based on her clinical findings, the ALJ was required to provide "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting Drs. Longhitano and Tolmasoff's opinions. Orn, 495 F.3d at 632 (quoting Lester, 81 F.3d at 830).

The ALJ clearly did credit Drs. Longhitano and Tolmasoff to some extent, by finding that the "mental health professionals concur" in the diagnosis of severe bipolar II disorder. Dr. Colonna, by contrast, who is a psychologist, did not diagnose Plaintiff with bipolar disorder. Rather, she diagnosed Plaintiff with poly-substance abuse versus dependence in remission per self-report, dysthymia, borderline intellectual functioning, and personality disorder borderline dependent traits. AR 407-08. Consequently, Dr. Colonna did not consider the impact bipolar disorder would have on Plaintiff's ability to work when assessing her functional limitations.

Dr. Longhitano, Plaintiff's treating psychiatrist who did diagnose Plaintiff with bipolar disorder, assessed limitations far more severe than those reflected in the ALJ's RFC. Dr. Longhitano's opinions would preclude Plaintiff from almost all interactions with co-workers, peers, and the general public , and from *any* detailed work[5]. See AR 585-86. This is in sharp contrast to Dr. Colonna's assessment that

---

[5] The ALJ's RFC concluded that Plaintiff was "limited to the performance of simple, routine, and repetitive work" but went on to allow for "less than occasional[] performance of complex technical work." RFC determinations typically use vocational terms such as occasional, frequent, and constant to describe the amount of time a claimant can do a certain task. See, Social Security Ruling ("SSR") 83-10, 1983 WL 31251. "Occasionally" means occurring from very little up to one-third of the time. Id. at *15. A limitation to "less than occasional" work therefore presumably means Plaintiff could do complex work less than one-third of the time. These two limitations appear to conflict with each other. If an individual is truly limited to only simple, routine, and repetitive work, then she is precluded from (Cont.)

Plaintiff only has "mild" inabilities to complete detailed tasks or interact with others. See AR 408. While an examining physician's opinion may constitute substantial evidence to discount a treating physician's opinion, the ALJ must still articulate why he believes the examining physician's opinion is more trustworthy. See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

The Commissioner argues that even if the ALJ did not explicitly provide a reason for discounting Dr. Longhitano's functional opinions, she was only Plaintiff's treating physician for a short amount of time, and her opinions were inconsistent with the "sporadic and conservative treatment" the ALJ noted Plaintiff previously received. JS at 15. However, it is not the Court's role to provide ad-hoc reasons for the ALJ's determination. Indeed, the ALJ must have given some amount of credence to Dr. Longhitano's treating relationship with Plaintiff, since he accepted her bipolar disorder diagnosis. At the same time, however, the ALJ did not provide any reasons why he did not give controlling weight to Dr. Longhitano's opinions as to the limitations caused by Plaintiff's bipolar disorder. Rather, the ALJ briefly summarized her opinion, then assigned all weight to the opinion of Dr. Colonna, with no explanation. The ALJ must provide reasons to discount the more restrictive opinion of Plaintiff's treating psychiatrist in favor of opinions by an examining psychologist, particularly since Dr. Colonna did not assess Plaintiff with bipolar disorder, a condition that the ALJ found Plaintiff has.

This is not harmless error. Dr. Longhitano's assessed limitations, including Plaintiff's inability to interact with others and the likelihood that Plaintiff would be

---

all complex, technical work. The Court assumes that the ALJ meant to limit Plaintiff to *mostly* simple, routine, and repetitive work, but allow some small amount of complex, technical work.

absent from work four days per month, are much more restrictive than the ALJ's RFC. Indeed, new evidence presented to the Appeals Council[6] from Dr. Longhitano demonstrates that Plaintiff's primary diagnosis of bipolar disorder is ongoing, that her prognosis is poor, and that when Plaintiff is in a "mixed state," she becomes depressed and irritable, cannot sleep, and has poor concentration and no motivation. AR 632-640. Dr. Longhitano maintains that these symptoms preclude Plaintiff from interacting with co-workers and remembering and executing tasks. AR 640. Had the ALJ specifically credited Dr. Longhitano's opinions, the ALJ might have assessed Plaintiff with a more restrictive RFC. The error, therefore, is not "inconsequential to the ultimately non-disability determination." Stout, 454 F.3d at 1055.[7]

---

[6] The Appeals Council considered Dr. Longhitano's additional report. See AR 7. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of SSA, 682 F.3d 1157, 1161 (9th Cir. 2012).

[7] Plaintiff also contends that the ALJ erred in discounting Dr. Tolmasoff's opinions. Dr. Tolmasoff provided a one-paragraph letter opining that Plaintiff's symptoms "impair her ability to sustain employment." AR 629. This vague statement is not probative or significant because it was not based on any apparent objective or clinical findings, it did not articulate with any specificity what Plaintiff could still do, and it appeared to be limited to a brief description of Plaintiff's symptoms. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding that ALJ is "not required to discuss evidence that is neither significant nor probative"). At best, Dr. Tolmasoff's letter constitutes an opinion on an issue reserved to the Commission. See e.g., McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity"). Therefore, the ALJ did not err in failing to discuss the specific opinions of Dr. Tolmasoff.

**B.      The ALJ Erred by Finding Plaintiff Capable of Performing Past Relevant Work.**

   **1.      Applicable Law.**

At Step Four, a claimant has the burden to prove that she cannot perform her past relevant work either as actually performed or as generally performed in the national economy. Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). The Commissioner defines the phrase "past relevant work" as "work you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). The ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report. Id. (citing S.S.R. 82-61). A job qualifies as past relevant work only if it involved substantial gainful activity. 20 C.F.R. §§ 404.1560, 404.1565, 416.960 and 416.965. Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities. 20 C.F.R. §§ 404.1571-404.1572 and 416.971-416.975.

   **2.      The ALJ erred by concluding that Plaintiff engaged in past relevant work as a garment sorter.**

The ALJ sent interrogatories to a VE. AR 320-25. The VE identified the following occupations as Plaintiff's past work: bagger (DOT 920.687-014); garment sorter (DOT 222.687-014); and receptionist (DOT 237.367-038).[8] AR 322. At Step Four of the disability evaluation, the ALJ concluded that Plaintiff was able to perform her past relevant work as a garment sorter. AR 30. Plaintiff contends that she did not earn sufficient wages as a garment sorter to count as substantial

---

[8] The VE collectively identified these jobs as having "moderate" stress levels of "3-4." AR 322. It is unclear whether any of these jobs actually match the RFC's limitation to a stress level of 3 and no higher. See AR 26.

gainful activity. JS at 6.

Plaintiff testified that she worked folding clothes at American Apparel in 2009. AR 47, 55. Plaintiff also reported on a "Work History Report" form that she worked in a warehouse of a "Clothing Distributor" from 2006 to 2009, where she described her job duties as "packing clothing" and "shipping items to inspection[.]" AR 218-19. However, Plaintiff's reported income for the relevant time period is as follows:

| Year | Amount Earned | Employers |
|---|---|---|
| 2006 | $292.65 | Von's ($159.32); American Publishing Co. ($133.33) |
| 2007 | $9,208.44 | Von's ($258.20); Home Depot ($8,950.24) |
| 2008 | $4,746.00 | Unknown |
| 2009 | $0.00 | |
| 2010 | $3.88 | Unknown |
| 2011 | $972.00 | Unknown |

AR 185; 187-88. While it appears that some data may be missing from Plaintiff's employment history, the Court is constrained to reviewing the evidence of record. No income was reported reflecting an American Apparel job, or any other employment as a garment sorter, during the relevant years. See AR 187-88. Rather, Plaintiff's reported income was earned primarily from employment at Von's (a grocery store) and Home Depot (a hardware construction supply retail store). Id. Plaintiff listed her work at those companies as grocer aid and receptionist, respectively.[9] AR 218.

---

[9] The VE indicated that the RFC's limitation to occasional interaction with the public precluded Plaintiff from working as a grocer aid or receptionist. AR 323.

The only meaningful reported income that is not assigned to a particular employer was in 2008, within the window that Plaintiff reported she worked at American Apparel. Id., AR 187-88. Plaintiff's reported income in 2008 was $4,746, or approximately $396 per month. The Commissioner defined substantial gainful activity in 2008 as $940 per month. See https://www.ssa.gov/OACT/COLA/sga.html. Therefore, even if the entirety of Plaintiff's 2008 income was earned as a garment sorter, Plaintiff would not have demonstrated substantial gainful employment as a garment sorter.[10]

Further, the ALJ noted at Step One of the disability evaluation that Plaintiff's earnings in 2007, 2008, and 2011 were minimal, and therefore "not indicative of 'substantial gainful activity.'" AR 25. The ALJ could not then consider work that had taken place during those years to constitute past relevant work. See 20 C.F.R. §§ 404.1560, 404.1565, 416.960 and 416.965. No substantial evidence exists to conclude that Plaintiff earned enough money to constitute substantial gainful activity as a garment sorter. Therefore, the ALJ erred in concluding that Plaintiff was not disabled because she could engage in her past relevant work as a garment sorter.

**3. The ALJ's error is not harmless.**

It appears that the Commissioner concedes that the ALJ erred in finding Plaintiff capable of performing past relevant work as a garment sorter. JS at 7. However, the Commissioner argues that any error in finding that Plaintiff could

---

[10] The Court notes that Plaintiff's most substantial reported income from one source was $8,950.24 from Home Depot. Assuming she worked there for the whole year, that income would have resulted in monthly earnings of approximately $746. The Commissioner defined substantial gainful activity in 2007 as $900 per month. See https://www.ssa.gov/OACT/COLA/sga.html. Therefore, Plaintiff's highest income from a single employer does not meet the earnings threshold for substantial gainful activity.

perform her past relevant work is harmless, because the VE identified other jobs that Plaintiff could perform given her RFC. JS at 7. In interrogatories, the VE opined that a hypothetical person with the same RFC as Plaintiff could perform work as a hospital cleaner (DOT 323.687-010), store laborer (DOT 922.687-058), and hand packager (DOT 920.587-018). AR 324.

In Tommassetti, the Ninth Circuit held that the ALJ's error at Step Four was harmless, because the ALJ then conducted analysis at Step Five and accepted VE testimony regarding other work Plaintiff could perform. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008). Here, however, the ALJ engaged in no such analysis. Upon finding that Plaintiff could perform her past relevant work, the ALJ ended the inquiry and found Plaintiff not disabled. The Commissioner argues that because the VE provided other jobs that Plaintiff could perform based on the same RFC, this error was harmless; the ALJ would have simply adopted the VE's conclusions and found Plaintiff disabled at Step Five.

The Court cannot confidently conclude that the ALJ would have accepted the VE's testimony. Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006). The RFC limits Plaintiff to work with a stress level no higher than 3 on a scale of 1 to 10. AR 26. The DOT does not include ratings for a position's stress level.[11] The VE offered opinions about various jobs' stress level, but she did not indicate on what experience or authority she based these determinations . Moreover, her stress level opinions were ambiguous. For example, the VE opined that each of Plaintiff's past jobs has a stress level of "3-4" without specifying whether it was 3, 4, or some number in between. AR 322. The VE may have meant that these jobs have a stress level of 3 as performed at some employers, but a stress level of 4 at

---

[11] If this were a case in which the RFC could be easily compared to DOT guidelines, then the Court might have been able to find that no reasonable ALJ would find the VE's testimony unpersuasive.

others. Alternatively, she may have meant that some days have a stress level of 3, but other days at the same job would be more stressful. While the VE did not articulate specific findings as to the stress levels of the hospital cleaner, store laborer, or hand packager jobs, she did opine Plaintiff could perform those jobs. See AR 324. However, she also opined that Plaintiff could work as a garment sorter, a job she classified as a "3-4," so she may have classified the alternative jobs similarly. In light of the ambiguities in the VE's testimony regarding the stress levels of Plaintiff's past jobs, without further testimony and discussion by the ALJ, it is unclear whether the new jobs the VE identified are truly consistent with the RFC's limitation that Plaintiff work at a stress level no higher than 3. The Court, therefore, cannot find harmless error.[12]

## C. Remand for Further Proceedings is Appropriate.

When an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). When no useful purpose would be served by further proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true" rule to direct an immediate award of benefits. See Id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100-01 (9th Cir. 2014). Here, remand for further proceedings is appropriate because the ALJ did not properly consider the opinion of Plaintiff's treating doctor and erred in finding that Plaintiff engaged in past relevant work as a

---

[12] The Court also notes that the jobs the VE chose may conflict with the RFC's requirements that Plaintiff only can walk for 30 minutes at a time and stand for 1 hour at a time. Common sense indicates that a hospital cleaner and a store laborer may be required to walk or stand for the majority, if not the entirety, of an eight-hour workday, with regular breaks.

garment sorter. On remand, the ALJ will need to reassess the medical evidence, Plaintiff's RFC, and Plaintiff's ability to work in light of Plaintiff's new treatment records, and seek the additional testimony of a vocational expert.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

DATED: May 22, 2017

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge